# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHARON M. HARRISON,

    Plaintiff,

      v.

OFFICE OF THE ARCHITECT OF THE
CAPITOL,

    Defendant.

Civil Action No. 10-1480 (CKK)

## MEMORANDUM OPINION
(September 23, 2014)

Presently before the Court is Plaintiff's [72] Motion for Reconsideration of the Court's [69] Order, granting Defendant's Motion for Summary Judgment and granting in part Defendant's Motion for Sanctions, and accompanying [70] Memorandum Opinion. Plaintiff argues that: (1) the Court erred by imposing a sanction on Plaintiff; (2) the Court erred by applying case law related to Title VII claims to the instant action brought under the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1301 *et seq.*; and (3) the Court made specific errors in its findings related to each of the six Counts in Plaintiff's Complaint. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court INCORPORATES into this opinion its reasoning as laid out in its [70] Memorandum Opinion, *see* 964 F. Supp. 2d 81 (D.D.C. 2013), and DENIES Plaintiff's motion for reconsideration for the foregoing reasons.

---

[1] The Court's decision is based on the record as a whole, but the Court's analysis focused on the following documents, listed in chronological order of filing: Pl.'s Mot. for Reconsideration ("Pl.'s Mot."), ECF No. [72]; Def.'s Memo. in Opp'n to Pl.'s Mot. for Reconsideration ("Def.'s Opp'n"), ECF No. [73]; Pl.'s Reply Mem. in Supp. of her Mot. for Reconsideration ("Pl.'s Reply"), ECF No. [75].

# I.      BACKGROUND

The Court has detailed the underlying facts of this Motion in its previous opinion.  *See Harrison v. Office of the Architect of the Capitol*, 964 F. Supp. 2d 81, 85-92 (D.D.C. 2013).   The instant matter is based on events that occurred between November 12, 2009 and August 31, 2010.   During all pertinent times, Plaintiff, Sharon Harrison, was employed by Defendant, the Architect of the Capitol.   This action is the second of three lawsuits filed in this Court by the Plaintiff challenging various aspects of her employment with the Defendant.   On July 23, 2009, Plaintiff filed her first action ("*Harrison I*") against Defendant, alleging that Defendant unlawfully discriminated against her in violation of 2 U.S.C. § 1311(a)(1), and unlawfully retaliated against her in violation of 2 U.S.C. § 1317(a).   *See* Civ. No. 09-1364 (CKK) ("*Harrison I*").   On August 31, 2010, Plaintiff filed the instant action ("*Harrison II*") against Defendant, alleging that Defendant unlawfully retaliated against her in violation of 2 U.S.C. § 1317(a).   On February 23, 2011, Plaintiff filed a third action ("*Harrison III*") against Defendant, alleging that Defendant unlawfully retaliated against her in violation of 2 U.S.C. § 1317(a).   *See* Civ. No. 11-420 (CKK) ("*Harrison III*").   By separate orders, the Court granted summary judgment in favor of Defendant in each of the three actions.   *See Harrison I*, 964 F. Supp. 2d 71 (D.D.C. 2013); *Harrison II*, 964 F. Supp. 2d 81 (D.D.C. 2013); *Harrison III*, 985 F. Supp. 2d 13 (D.D.C. 2013).

In the instant action, the Court granted in part Defendant's Motion for Sanctions related to Plaintiff destroying a recording device requested by Defendant through discovery.   The Court also granted summary judgment in favor of Defendant on all six of Plaintiff's claims: (a) unlawful retaliation for Plaintiff's protected activities in violation of the CAA based on a search of Plaintiff's coat (Count I); (b) unlawful retaliation for Plaintiff's protected activities based on

Defendant's violation of Procedural Rule 2.03(m) when processing one of Plaintiff's Requests for Counseling (Count II); (c) unlawful retaliation for Plaintiff's protected activities based on the March 8, 2010, proposed reprimand of Plaintiff (Count III); (d) unlawful retaliation for Plaintiff's protected activities related to the March 3, 2010, inquiry regarding the protocol for obtaining access to Plaintiff's email (Count IV); (e) unlawful retaliation for Plaintiff's protected activities based on the issuing of a Performance Improvement Plan (Count V); and imposition of a retaliatory hostile work environment against Plaintiff (Count VI). *See generally Harrison II*, 964 F. Supp. 2d 81 (D.D.C. 2013).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) permits a party to file "[a] motion to alter or amend a judgment" within "28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Motions under Rule 59(e) are "disfavored" and the moving party bears the burden of establishing "extraordinary circumstances" warranting relief from a final judgment. *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001). Rule 59(e) motions are "discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks omitted). Rule 59(e) does not provide a vehicle "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995)).

## III.    DISCUSSION

First, Plaintiff alleges that the Court erred by imposing a sanction on her for destroying a

recording device requested by Defendant through discovery. Second, Plaintiff further alleges that the Court erred by applying case law related to Title VII claims to the instant action brought under the CAA. Finally, Plaintiff raises specific objections to the Court's findings on each of the six Counts of the Plaintiff's Complaint. The Court shall address each argument in turn.

### A.  *Sanction Imposed on Plaintiff*

Plaintiff argues that the Court failed to consider certain medical evidence when making its determination that a sanction should be imposed against Plaintiff for destroying a digital recorder. While a complete account of the incident related to Plaintiff's digital recorder is included in the Court's earlier opinion, *see Harrison II*, 964 F. Supp. 2d 81, 88-90 (D.D.C. 2013), the Court shall provide a brief summary of the facts in order to address Plaintiff's request for reconsideration. While Plaintiff was out of the office, Kristy Miller and Amy Heslep, two employees of Defendant, found a recording device in Plaintiff's coat pocket. *Id.* at 89. Ms. Miller identified the recorder as a white, Olympus-brand voice-activated digital recorder, and noticed that the numbers on the digital display were moving when she removed the recorder from Plaintiff's coat pocket. *Id.* Ms. Heslep attempted to turn the device off and then returned it to Plaintiff's coat pocket. *Id.* Ms. Miller and Ms. Heslep contacted a number of individuals in the chain of command as well as the Capitol Police to report the incident. *Id.* Plaintiff was informed that the Rules of the House of Representatives prohibited the use of recording devices in her office, and Ms. Miller and Ms. Heslep were verbally counseled for touching Plaintiff's property. *Id.* Defendant later requested that Plaintiff produce the recording device through discovery. The Court explained in its earlier opinion:

> Prior to the Plaintiff's deposition on August 25, 2011, the Defendant submitted a discovery request for the recording device. Harrison Dep. 27:14:16. The Plaintiff testified that when the Defendant made its request for the device, the Plaintiff

"took a hammer and [] hit it and [] destroyed it and [] broke it up in pieces and [] threw it away." *Id.* 27:3-5; 31:17-25. The Plaintiff also disposed of the instruction book for the recorder. *Id.* 36:8-18. The Plaintiff claims to have made a copy of the conversation between Ms. Miller and Ms. Heslep at the time they discovered the recorder in the Plaintiff's coat, and produced a copy of the recorded conversation to the Defendant. *Id.* 28:16-29:13. When asked why she destroyed the device, the Plaintiff explained that the recorded conversation on the device "was depressing" and the Plaintiff "didn't want it around." *Id.* 28:9-20. The Plaintiff denies that the recording device was voice activated. *Id.* 32:16-21; 35:23-36:7.

*Id.* at 89-90.

Defendant requested that the Court impose a sanction on Plaintiff for destroying the recording device by dismissing Count I of her Compliant. *See* Def.'s Mot. for Sanction & Atty. Fees at 1, ECF No. [71]. The Court granted in part the Defendant's request for a sanction, but did not dismiss Count I as requested. Instead, the Court imposed a lesser sanction. In resolving the parties' cross-motions for summary judgment, the Court assumed that the recording device would have revealed that Plaintiff was intentionally taping conversations between her co-workers without their consent. *Harrison II*, 964 F. Supp. 2d at 95. Plaintiff asserts that the Court erred by not considering medical evidence in reaching its conclusion and imposing this negative inference on Plaintiff.

Plaintiff argues that she submitted "relevant medical evidence supporting the use by the Plaintiff of her recording device to assist her in her on going medical treatment, therapy and recovery from the assault and post traumatic stress disorder she sustained in the workplace."[2]

---

[2] Plaintiff's reference to an assault refers to an incident described in *Harrison I*:

On August 6, 2008, the Plaintiff alleges that Mr. Hayleck approached the Plaintiff's desk and screamed at the Plaintiff while waiving [sic] a piece of paper in close proximity to the Plaintiff's face . . . . Mr. Hayleck was upset that the Plaintiff had sent an email to David Ferguson, the Plaintiffs third-line supervisor, regarding a "controversial training request."

Pl.'s Mot. at 2. In support of this argument, Plaintiff cites to her own declaration that "pursuant to doctor's orders, [she] used [her] tape player to record [her] thoughts for later use in sessions with [her] doctors," and that she "recorded [her] thoughts for later discussion with [her] doctors before and after [she] left the workplace and sometimes during [her] lunch breaks and/or other breaks in the work day." Harrison Declaration ¶¶ 9, 12, ECF No. [59].

Plaintiff argues that "[t]he Court in rejecting said medical evidence, is necessarily left to draw the adverse inference that the Plaintiff destroyed her recording device to surreptitiously tape conversations in her office, when in fact the recording device was destroyed to maintain the privacy of her personal thoughts at time when she was suffering from an emotional and psychic chaos." Pl.'s Mot. at 2. Plaintiff misstates the Court's finding. The Court relied on the negative inference that the recording device would have revealed that Plaintiff was intentionally taping conversations between her co-workers without their consent *as a sanction* for Plaintiff's destruction of the recording device after it was requested through discovery. *Harrison II*, 964 F. Supp. 2d at 95. Plaintiff's own explanation as to *why* she had the recording device in her coat pocket at work in the first place provides no basis for the Court to reconsider its ruling that Plaintiff should be subject to a sanction for destroying evidence. Indeed, the Court expressly found that one of the questions that could not be answered because Plaintiff destroyed the recording device was whether Plaintiff was, as she argued, using the device as part of her psychotherapy. *Harrison II*, 964 F. Supp. 2d at 94.

Further, Plaintiff in her motion for reconsideration asserts that she destroyed the recording device to "maintain the privacy of her personal thoughts." Pl.'s Mot. at 3. However, this explanation conflicts with Plaintiff's own deposition, in which stated that she destroyed the

*Harrison I*, 964 F. Supp. 2d 71, 74 (D.D.C. 2013) (internal citations omitted).

recording device because it was "depressing." When asked why it was "depressing," Plaintiff indicated that it contained a recorded a conversation between Ms. Miller and Ms. Heslep when they were going through her jacket and Ms. Miller called her an expletive. Harrison Dep. 28:6-29:11, ECF No. [54-2]. Plaintiff also expressly admitted that she destroyed the recording device after she received notice that Defendant had requested it. *Id.* at 32:1-6. Accordingly, the Court shall not reconsider its holding that as a sanction for Plaintiff destroying the recording device, the Court should negatively infer that at least one of Plaintiff's uses for the recording device was to record her co-workers without their consent. *See Harrison II*, 964 F. Supp. 2d 81, 93-95 (D.D.C. 2013).[3]

## B. *Protection Provided Against Discrimination & Retaliation Under the CAA*

Next, Plaintiff argues that the Court erred by applying case law related to the antidiscrimination and antiretaliation provisions of Title VII to the instant action because the CAA provides broader protection against discrimination and retaliation. Pl.'s Mot. at 5-10. Plaintiff roots her argument in two sources: (1) the text of the CAA and Title VII; and (2) decisions of the Office of Compliance Board ("Board") related to CAA claims. *Id.* In contrast, Defendant argues that the Court's application of case law related to Title VII was appropriate because: (1) both the text of the statutes and precedent in this jurisdiction support the finding that the CAA incorporates Title VII and its underlying body of law; and (2) decisions by the Board

---

[3] Plaintiff appears to argue that the Court should have considered the "totality of the circumstances" when determining whether to sanction Plaintiff for destroying evidence. Pl.'s Mot. at 2. The Court notes that it applied the appropriate legal standard when determining whether to impose sanctions on Plaintiff. Indeed, the Court expressly imposed a sanction "to deter the Plaintiff from engaging in discovery misconduct in connection with her third suit, and to deter future litigants from intentionally destroying evidence directly relevant to their affirmative claims." *Harrison II*, 964 F. Supp. 2d at 95; *see also Webb v. D.C.*, 146 F.3d 964, 971 (D.C. Cir. 1998).

are not binding on this Court.  Def.'s Opp'n at 2-5.  The Court finds that it did not err by applying Title VII precedents to the instant action for the reasons described herein.

Turning to Plaintiff's first argument, Plaintiff asserts that the statutory language itself justifies different standards for claims brought under the CAA and those brought under Title VII. Plaintiff argues that the statutory language of the CAA's antidiscrimination provision demonstrates that the protection is broader than that encompassed by Title VII.  The relevant portion of the CAA provides: "All personnel actions affecting covered employees shall be made free from any discrimination based on . . .  race, color, religion, sex, or national origin, within the meaning of section 703 of the Civil Rights Act of 1964 [Title VII]."  2 U.S.C. § 1311(a)(1). Title VII's antidiscrimination provision provides:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or . . . to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).  Plaintiff argues that the reference in the CAA to "all personnel actions" covers a broader range of potential employment actions than Title VII which only provides relief from specific types of employment actions.  Pl.'s Mot. at 7.

Plaintiff similarly argues that the antiretaliation provision of the CAA is broader than the analogous provision in Title VII.  With regards to retaliation, the CAA provides:

> It shall be unlawful for an employing office to intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful by this Act, or because the covered employee has initiated proceedings, made a charge, or testified, assisted, or participated in any manner in a hearing or other proceeding under this Act.

2 U.S.C. § 1317(a).  Title VII also provides protection against retaliation, stating:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this title [Title VII] [], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [Title VII] [].

42 U.S.C. § 2000e-3.  Plaintiff argues that the inclusion of the word "intimidate" demonstrates that the antiretaliation provision, like the antidiscrimination provision, of the CAA covers against a broader range of employer activity.  Pl.'s Mot. at 7-9.  Defendant argues that the CAA explicitly applied eleven employment and workplace laws, including Title VII, to the legislative branch of the federal government and, thus, the case law interpreting Title VII is appropriately applied to actions brought under the CAA.  Def.'s Opp'n at 3-4.

The Court finds Plaintiff's argument related to the statutory language unpersuasive.  In *Newton v. Office of the Architect of the Capitol*, Judge Royce C. Lamberth held that Title VII case law applied to discrimination and retaliation claims brought under the CAA.  905 F. Supp. 2d 88 (D.D.C. 2012), *aff'd* No. 12-5145, 2012 WL 660367 (D.C. Cir. Dec. 6, 2012).  In a detailed analysis, Judge Lamberth found that neither precedent in this jurisdiction nor statutory interpretation supported the plaintiff's claim that judicial interpretations of Title VII discrimination and retaliation claims were inappropriately applied to actions brought under the CAA.  *Id.* at 92-93.  Indeed, contrary to Plaintiff's argument, courts in this jurisdiction consistently have read the CAA to incorporate Title VII as well as other remedial federal statutes and, thus, have applied case law related to underlying remedial federal statutes, such as Title VII,

in analyzing claims brought under both the antidiscrimination and antiretaliation provisions of the CAA. *See, e.g., Blackmon-Malloy v. United States Capitol Police Bd.*, 575 F.3d 699, 706 (D.C. Cir. 2009) (noting that "[t]he CAA incorporates much of Title VII's substantive law, but it establishes its own comprehensive administrative regime – including jurisdictional provisions"); *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 492 (D.C. Cir. 2008) (noting that Title VII applies to offices of the legislative branch through the CAA and applying Title VII analysis to the plaintiff's discrimination claims); *Anyaso v. United States Capitol Police*, Civ. No. 12-1327, 2014 WL 1501242, at *4 & *8 (D.D.C. Apr. 7, 2014) (finding that courts analyze both discrimination and retaliation claims brought under the CAA using the same standards as claims brought under Title VII); *Gordon v. Office of the Architect of the Capitol*, 928 F. Supp. 2d 196, 206 (D.D.C. 2013) (holding that discrimination claims brought under the CAA are analyzed under the *McDonnell Douglas* framework); *Joyce v. Office of the Architect of the Capitol*, 966 F. Supp. 2d 15, 22 (D.D.C. 2013) ("In substance, . . . the Congressional Accountability Act expressly incorporates protections and remedies from the generally applicable federal antidiscrimination statutes . . . . Though retaliation under the CAA has no explicit tie to other statutes, . . . both parties agree — following D.C. Circuit *dicta* and district court holdings — that the framework for Title VII retaliation applies."); *Moran v. United States Capitol Police Bd.*, 887 F. Supp. 2d 23, 30 (D.D.C. 2012) ("Although the CAA contains its own retaliation provision, courts refer to the body of case law regarding discrimination under Title VII to evaluate claims of retaliation under the CAA."). Indeed, this Court addressed this issue in an earlier ruling and noted that, "[c]laims brought under the CAA are analyzed under Title VII's familiar framework and standards . . . . [and] [a]lthough the CAA includes its own anti-retaliation provision, *see* 2 U.S.C. § 1317(a), courts routinely rely upon Title VII case law when evaluating whether a

challenged employment action is sufficiently adverse under the CAA's anti-retaliation provision." *Herbert v. Architect of the Capitol*, 839 F. Supp. 2d 284, 291 n.2 (D.D.C. 2012) (internal citations omitted). Accordingly, the Court finds that Title VII analyses are properly applied to claims related to Title VII but brought through the CAA pursuant to the case law in this jurisdiction.

Turning to Plaintiff's second argument that this Court should follow the Board's interpretations of the antiretaliation provision of the CAA, the Court similarly finds that this argument is not persuasive. As the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") explained, "Congress extended the protections of Title VII of the Civil Rights Act of 1964, as well as ten other remedial federal statutes, to employees of the legislative branch" through the CAA. *Blackmon-Malloy v. United States Capitol Police Bd.*, 575 F.3d 699, 701 (D.C. Cir. 2009); *see also* 2 U.S.C. § 1302(a) ("The following laws shall apply, as prescribed by this Act, to the legislative branch of the Federal Government . . . Title VII of the Civil Rights Act of 1964 . . . ."). The D.C. Circuit noted that CAA sets up a three-step internal process, including counseling and mediation, for an aggrieved employee to follow. Upon completion of the three-step process, an employee may file a complaint either with the Office of Compliance Board or in district court. *Id.* at 701-02. However, as another judge in this district noted, Board decisions are not final because they are appealable to the Federal Circuit, making both complaints brought with the Office of Compliance and in district court ultimately subject to judicial review. *Newton v. Office of the Architect of the Capitol*, 905 F. Supp. 2d 88, 92 (D.D.C. 2012). Accordingly, the CAA "suggests judicial, not Board, primacy by providing that courts, rather than the Board, shall (if necessary) have the final word on all complaints." *Id.* at 92-93.

Plaintiff points to two Board decisions supporting her argument that the antiretaliation

provision of the CAA should be read more broadly than that of Title VII.  Pl.'s Mot. at 7-9

(citing *Solomon v. Office of the Architect of the Capitol*, Case No. 02-AC-62 (RP) (Office of

Compliance Dec. 7, 2005) (Decision of Bd. of Dir.), http://www.compliance.gov/wp-

content/uploads/2010/03/solomon_12-07-05.pdf; *Britton v. Office of the Architect of the Capitol*,

Case No. 08-AC-20 (CV, RP) (Office of Compliance May 23, 2005) (Decision of Bd. of Dir.),

http://www.compliance.gov/wp-content/uploads/2010/03/britton_05-23-05.pdf).    Contrary to

Plaintiff's assertion that the CAA provides broader protection than Title VII, in *Britton v. Office*

*of the Architect of the Capitol*, a case cited approvingly by Plaintiff, the Board found that a Title

VII-based approach to claims brought under the CAA was appropriate.  *Britton*, Case No. 08-

AC-20 (CV, RP), at 7.  Accordingly, the cited Board opinion supports, rather than refutes that

appropriateness of applying Title VII standards to actions brought under the CAA.  The Board in

*Britton* considered the varying approaches to Title VII adopted by different circuits to determine

what employment actions should be actionable under the CAA.  Ultimately, the Board rejected

the D.C. Circuit's approach and adopted the broader approach of other circuits, including the

Ninth Circuit.  *Id.* at 7-9.  As a result, the Board found actionable under the CAA "any adverse

treatment that is based on a retaliatory motive and is reasonably likely to deter a charging party

or others from engaging in protected activity."  *Id.* at 8 (quoting *Ray v. Henderson*, 217 F.3d

1234, 1240-43 (9th Cir. 2000)).  However, given the "judicial primacy" embodied in the CAA,

the Court is unpersuaded that it should follow the Board's adoption of the Ninth Circuit's

interpretation of Title VII over binding precedent interpreting Title VII.  Notably, there is no

Federal Circuit opinion that adopts the Board's approach.[4]  Most importantly, after the cited

---

[4] Plaintiff cites to one Federal Circuit opinion in her reply, *Duncan v. Office of the Architect*, 541 F.3d 1377 (Fed. Cir. 2008).  Pl.'s Reply at 6.  In *Duncan*, the Federal Circuit held

Board decisions, the Supreme Court of the United States expressly adopted the D.C. Circuit's interpretation of the antiretaliation provision of Title VII over those employed by other circuits, including the one adopted by the Board, in *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006). *Id.* at 67-68. Indeed, the Supreme Court held: "In our view, plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotations omitted). Therefore, the Board decisions Plaintiff cites rely on Title VII precedent that has been overruled by the Supreme Court.

Accordingly, the Court is not persuaded that either the language of the CAA itself or the decisions handed down by the Office of Compliance Board require the Court to reconsider its earlier ruling. Rather, relying on the body of case law in this jurisdiction and Supreme Court precedent, the Court concludes that it did not err in applying precedents from Title VII to Plaintiff's claims in the instant action and, thus, Plaintiff's request for reconsideration on this issue is denied.

### C. *Specific Objections Related to Each Count of the Complaint*

Finally, Plaintiff raises individual objections to the Court's grant of summary judgment in favor of Defendant on each of the six counts in the Complaint. Pl.'s Mot. 2-7. The Court shall address each of Plaintiff's requests for reconsideration on the individual counts in turn.

---

that the plaintiff could bring an OSHA-related retaliation claim before the Board through the CAA. *Id.* at 1380. However, the Federal Circuit in *Duncan* did not adopt the Board's standard for a retaliation claim under the CAA. Rather, the court noted that the Board applied the "reasonably likely" standard, *id.* at 1379, but ultimately the court upheld the Board's ruling in favor of the defendant because the plaintiff failed to meet the causation requirement of his claim. *Id.* at 1380.

### 1. Count I: Search of Plaintiff's Coat Pocket

As to Count I, the Court granted summary judgment to Defendant on Plaintiff's allegation that the search of her coat by Ms. Miller and Ms. Heslep was in retaliation for her protected activity. *See Harrison II*, 964 F. Supp. 2d 81, 96-97 (D.D.C. 2013). As the Court explained, "Plaintiff failed to present sufficient evidence from which a reasonable jury could conclude that the stated reason for searching the Plaintiff's coat was a pretext for discrimination." *Id.* at 97. In relation to Count I, Plaintiff argues that the Court should have considered medical evidence related to the recording device and not adopted the negative inference that Plaintiff was using the recording device to record her coworkers without their consent. As discussed *supra*, the Court already has rejected this as a basis for reconsidering the sanction imposed on Plaintiff and similarly finds that it appropriately applied this negative inference to its analysis of Count I. Plaintiff also argues that Defendant's proffered legitimate, nondiscriminatory reason for searching Plaintiff's coat was insufficient. Pl.'s Mot. at 3. The Court carefully analyzed this issue and determined that "no reasonable jury could conclude, based solely on temporal proximity to protected activity and short time frame between Plaintiff's return and the search, that the Defendant's proffered explanation for the search was a pretext for discrimination." *Harrison II*, 964 F. Supp. 2d at 97. Plaintiff provides no basis to reconsider this holding.

### 2. Count II: Purported Violation of Procedural Rule 2.03(m)

The Court held that it lacked jurisdiction over Count II because Plaintiff failed to meet her burden of showing that she exhausted her administrative remedies. *Harrison II*, 964 F. Supp. 2d at 97-98. Plaintiff simply resubmits that "pursuant to violation by Defendant of Procedural Rule 2.03(m) in Case No. 09-AC-80 (DA, FM, RP), she timely submitted a Request for

Counseling in Case No. 10-AC-28 based on said violation, participated in mediation and timely filed the instant matter as Count II in the above captioned case removing any exhaustion issue in the instant matter." Pl.'s Mot. at 3. Plaintiff makes no additional arguments as to why the Court should reconsider its ruling. The Court already has addressed this issue in its earlier opinion and, thus, the Court shall not reconsider its ruling on this issue. *Harrison II*, 964 F. Supp. 2d at 97-98.

### 3. Counts III: March 8, 2010, Proposal to Reprimand

As to Count III, the Court held that Plaintiff failed to establish that she was subject to an adverse employment action based on a Proposal to Reprimand her that was subsequently withdrawn. *Harrison II*, 964 F. Supp. 2d at 98. Plaintiff argues that the Proposal to Reprimand "was actionable" under the CAA. As discussed *supra*, the Court shall not reconsider its ruling on the basis that the CAA encompasses protection against a broader range of employment actions than Title VII. Indeed, the Court properly applied Title VII analysis and binding precedent from the D.C. Circuit in reaching its holding. *Id.* Accordingly, the Court shall deny Plaintiff's request to reconsider this holding.[5]

### 4. Count IV: March 3, 2010, Request for Protocol for Acquiring Access to Plaintiff's Computer

As to Count VI, the Court held that Plaintiff failed to establish that she was subject to an adverse employment action based on two Acting Chiefs inquiring about the protocol for acquiring access to Plaintiff's computer. *Harrison II*, 964 F. Supp. 2d 81, 98-99 (D.D.C. 2013).

---

[5] Plaintiff also argues that Defendant failed to offer a legitimate, non-retaliatory reason for the issuance of the Proposal. Pl.'s Mot. at 3. This argument is irrelevant because the Court held that Plaintiff failed to establish a prima face case for retaliation and, thus, the burden never shifted to Defendant under the *McDonnell Douglas* framework. *See Harrison II*, 964 F. Supp. 2d at 96 & 98.

Plaintiff argues that this was an actionable claim under the CAA.  As previously mentioned, the Court shall not reconsider its ruling on the basis that the CAA encompasses protection against a broader range of employment actions than Title VII.  Indeed, the Court properly applied Title VII analysis and binding precedent from the D.C. Circuit in reaching its holding.  *Id.* Accordingly, the Court shall deny Plaintiff's request to reconsider this holding.[6]

### 5. Count V: March 29, 2010, Performance Improvement Plan

As to Count V, the Court held that Plaintiff failed to establish that she was subject to an adverse employment action after she was the subject of a Performance Improvement Plan ("PIP") that was never implemented.  *Harrison II*, 964 F. Supp. 2d 81, 99 (D.D.C. 2013).  The Court further found that no reasonable jury could conclude Defendant's stated reason for issuing the PIP, namely Plaintiff's deficient work performance, was a pretext for discrimination. *Id.* at 100.  As previously mentioned, the Court shall not reconsider its ruling on the basis that the CAA encompasses protection against a broader range of employment actions than Title VII, as Plaintiff again argues here.  Pl.'s Mot. at 4.  Further, Plaintiff argues that "the issuance of the PIP by Acting Chief Heslep cannot be divorced from . . . Acting Chief Heslep's warrantless search of Plaintiff's clothing for which she was disciplined; cannot be divorced from the exposing of her improper attempt to gain access to the Plaintiff's workplace computer while the Plaintiff was present in the workplace, and cannot be divorced from the relevant medical evidence of Plaintiff resulting from the assault she sustained in the workplace and the post traumatic stress disorder

---

[6] Plaintiff again disputes Defendant's reason for the inquiry about protocol.  Pl.'s Mot. at 3-4.  This argument is irrelevant because the Court held that Plaintiff failed to establish a prima face case for retaliation and, thus, the burden never shifted to Defendant under the *McDonnell Douglas* framework.  *See Harrison II*, 964 F. Supp. 2d at 96 & 99.

resulting therefrom giving rise to the causes of action set forth in *Harrison I*."[7]  *Id.*  While Ms. Heslep did draft the PIP, the Court reviewed Plaintiff's subsequent performance evaluations submitted by Plaintiff to demonstrate that Defendant's proffered explanation was pretextual. After a review of Plaintiff's evidence, the Court found that "nearly two years after the plan was issued by Ms. Heslep, a new supervisor—who the Plaintiff does not allege had any retaliatory motive—reported many of the same issues with the Plaintiff's performance that were at issue in the plan."  *Harrison II*, 964 F. Supp. 2d at 100.  The Court properly considered the evidence before it and the appropriate legal standards and, thus, shall not reconsider its holding that the PIP, that was not implemented, did not constitute an adverse employment action or that there was no genuine issue of material fact as to whether Defendant's stated reason was a pretext for discrimination.

### 6.  Count VI: Hostile Work Environment Claim

As to Count VI, the Court held that "[n]o reasonable jury could conclude the purportedly offensive conduct was sufficiently severe or pervasive such that it altered the conditions of the Plaintiff's employment and created an abusive working environment."  *Harrison II*, 964 F. Supp. 2d at 101.  In reaching this conclusion, the Court explained:

> To establish a prima facie Title VII hostile work environment claim, the Plaintiff must show: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment occurred because of her protected status; and (4) the harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment.

*Harrison II*, 964 F. Supp. 2d at 100.  Plaintiff argues that the Court should have considered all incidents cited in *Harrison I* as well as all incidents cited in the instant matter in evaluating

---

[7] *See supra*, note 2, for a description of the alleged assault.

Plaintiff's hostile work environment claim.[8]  The Court expressly did not consider the following incidents because it already had held that Plaintiff failed to demonstrate a genuine issue of material fact as to whether those incidents were motivated by a retaliatory animus: (1) all incidents cited in *Harrison I*; (2) the search of Plaintiff's coat, related to Count I of the instant action; and (3) the issuance of the March 29, 2010 Performance Improvement Plan, which was never implemented, related to Count V of the instant action.  *Harrison II*, 964 F. Supp. 2d at 101.

Plaintiff appears to assert that the Court should have considered these incidents pursuant to the "totality of circumstances analysis" of the hostile work environment claim and notes that "retaliation under 2 U.S.C. 1317(a) of the CAA, does not require the materiality required under Title VII to be actionable under 2 U.S.C. 1317(a) of the CAA."  Pl.'s Mot. at 4.  Plaintiff misstates the law and the Court's reliance on it.  The Court did consider the "totality of the circumstances" when reaching its determination on the objective component of the hostile work environment claim. *Harrison II*, 964 F. Supp. 2d at 101 ("The objective prong requires the Court to evaluate 'the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance.'").  Rather, the Court did not consider certain incidents that it had already concluded were not motivated by a discriminatory or retaliatory animus and, thus, Plaintiff could not make the requisite showing as to those incidents that the harassment occurred because of her protected status.  *Harrison II*, 964 F. Supp. 2d at 100; *see also Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998) ("Whatever evidentiary route the plaintiff chooses to follow, he or

---

[8] The Court shall consider an additional specific incident (22 emails re: job postings) in its analysis of Plaintiff's hostile work environment claim in *Harrison III*.  However, the Court shall not consider this incident in the instant action because Plaintiff has failed to allege it in the complaint in the instant action.

she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimination* . . . because of . . . sex.'"); *Na'Im v. Clinton*, 626 F. Supp. 2d 63, 73 (D.D.C. 2009) ("Courts in this jurisdiction have routinely held that hostile behavior, no matter how unjustified or egregious, cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class."). Finally, Plaintiff's argument that "materiality" is not required under the CAA is misplaced as it relates to a hostile work environment claim. The Court expressly considered actions that it previously held were not materially adverse in its analysis of Plaintiff's hostile work environment claim, even though these actions, independently, could not serve as the bases for discrete retaliation claims. *Harrison II*, 964 F. Supp. 2d at 101.

Accordingly, the Court concludes Plaintiff has presented no basis for it to reconsider its holding that no reasonable jury could conclude the purportedly offensive conduct was sufficiently severe or pervasive such that it altered the conditions of Plaintiff's employment and created an abusive working environment.

**D. *Arguments Raised in Plaintiff's Reply***

Finally, Plaintiff raises new arguments in her reply that have not been raised in her initial motion for reconsideration. Plaintiff lists 45 mobbing behaviors, apparently in support of her argument that she was subject to a hostile work environment.[9] Pl.'s Reply at 2-3. The

---

[9] Plaintiff also seeks to incorporate arguments made in Plaintiff's reply brief in *Harrison I*, Civ. No. 09-1364, ECF No. [54]. *See* Pl.'s Reply at 1 ("Plaintiff incorporates by reference and makes a part hereof as if fully set forth herein the contents of Section I and Section II of its Reply to Defendant's Opposition to Plaintiff's Motion for Reconsideration in . . . '*Harrison I*,' respecting 'workplace mobbing,' 'workplace bullying,' and 'totality of circumstances' and 'exclusion of the medical evidence,' respectively."). The Court shall not readdress these arguments, which are discussed in full in the Court's ruling on Plaintiff's Motion for Reconsideration filed in *Harrison I*. *See Harrison I*, Civ. No. 09-1364, ECF No. [56].

arguments Plaintiff raises for the first time in her reply are forfeited because it leaves Defendant with no opportunity to respond. *See, e.g., McBride v. Merrell Dow & Pharm.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986) ("Considering an argument advanced for the first time in a reply brief . . . is not only unfair to [a defendant], but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." (citation omitted)); *Conservation Force v. Salazar*, 916 F. Supp. 2d 15, 22 (D.D.C. 2013), *aff'd* 699 F.3d 538 (D.C. Cir. 2012) (forfeiting an argument made for the first time in a reply brief); *see also Jones v. Mukasey*, 565 F. Supp. 2d 68, 81 (D.D.C. 2008) (holding that D.C. precedent consistently submits that courts should not address arguments raised for the first time in a party's reply). Even if the Court were to consider the arguments, the Court notes that many of the cited behaviors do not appear to correlate to the facts of this case. Pl.'s Reply at 2-3 (listing among the 45 mobbing behaviors, "You are interrupted constantly," "There is constant criticism about your private life," "You are terrorized on the telephone," "Colleagues are forbidden to talk with you," "There are no special tasks for you," "Supervisors take away assignments, so you cannot even invent new tasks to do," "You are given meaningless jobs to carry out," "You are given tasks that are below your qualifications," "You are forced to do a physically strenuous job," "Physical abuse," and "Outright sexual harassment."). Plaintiff also argues that she destroyed the recording device in order to protect against attacks on her reputation, identified as one grouping of the cited mobbing behaviors. Pl.'s Reply at 4. However, it is clear from the record that Plaintiff destroyed evidence with the full knowledge that it had been requested through discovery, and accordingly, the Court shall not reconsider its imposition of a sanction based on this argument. *Harrison II*, 964 F. Supp. 2d 81, 88-90 (D.D.C. 2013).

## IV.  CONCLUSION

For the reasons outlined above, the Court DENIES Plaintiff's [72] Motion for Reconsideration. The Court further INCORPORATES into this opinion its reasoning as laid out in its [70] Memorandum Opinion, *see* 964 F. Supp. 2d 81 (D.D.C. 2013).  This case remains dismissed.  An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE